UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | | |
|---|---|---|
| SIRRICO DARNELL SNIPES, | ) | |
| a/k/a MICHAEL SNIPES | ) | |
| | ) | |
| v. | ) | NO. 2:08-CV-269 |
| | ) | (Cr: 2:03-CR-70) |
| UNITED STATES OF AMERICA | ) | *Jordan/Inman* |

### MEMORANDUM and ORDER

Proceeding *pro se*, federal inmate and, here, petitioner Sirrico Darnell Snipes, a/k/a Michael Snipes, BOP Registry Number 22046-057, brings this motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, [Doc. 73 in Criminal Action No. 2:03-cr-70],[1] and a motion to supplement the § 2255 motion, [Doc. 84]. The United States has offered a response objecting to the § 2255 motion, and Snipes has submitted various other motions as well.

### I. Motion to Vacate

There are two outstanding claims in the motion—a claim that Snipes' guilty plea was not constitutionally valid and that he received ineffective assistance of counsel

**A.** *Standards of Review*

To seek relief under § 2255, a prisoner "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an

---

[1] All subsequent citations to the record refer to the criminal case file.

error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (citation omitted). A petitioner can be granted § 2255 relief on the basis of a constitutional error which had a substantial and injurious effect or influence on the proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994). However, a prisoner who is seeking to obtain collateral relief must clear a "significantly higher hurdle" than would exist on direct appeal. *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, a court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively a petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court finds that an evidentiary hearing is unnecessary and that it can decide this motion on the record.

**B. *Procedural Background***

In 2003, following his guilty plea, Snipes was convicted of conspiracy to distribute and to possess with the intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base (crack) and 500 grams or more of a mixture and substance containing a detectible amount of cocaine (powder), in violation of 21 U.S.C. § 846 and § 841(a)(1). Due to Snipes' admission to the quantity of crack cocaine and histwo

2

prior felony drug convictions, he received a statutory mandatory minimum sentence of life imprisonment without release. *See* 21 U.S.C. § 841(b)(1)(A).

Snipes appealed, alleging that the plea agreement had been breached, that his motion to withdraw his plea should have been granted, and that his sentence was constitutionally defective. The Sixth Circuit found that the government did not breach the plea agreement, that the motion to withdraw properly was denied, and that the other cited sentencing errors merited no relief. *United States v. Snipes*, 236 Fed.Appx. 996, 2007 WL 1892111 (6th Cir.), *cert. den.*, 552 U.S. 982 (2007). This instant motion followed, in which six claims were raised as grounds for relief. Four grounds were dismissed *sua sponte*, leaving only the two claims described above, [Doc. 74, Order of Oct. 10, 2008].

C. *Factual Background*

Snipes was represented initially by appointed counsel, Scott Pratt, who soon was replaced by retained Attorney M. Jeffery Whitt. With Mr. Whitt's assistance, Snipes entered into a plea agreement, which stated that, due to his two prior felony-drug convictions in North Carolina, he was subject to an enhanced mandatory minimum life sentence. The plea agreement further stated that the government would move for a downward departure if, in its sole discretion, Snipes provided substantial assistance. The drug amounts in the agreed factual basis were revised twice before Snipes would sign it. He then pled guilty, but six months after signing the plea agreement, Snipes retained Attorney Herbert Moncier. Mr. Moncier, along with Mr. Whitt, twice moved to withdraw the guilty plea. After the first

3

motion was denied, a second motion followed and thereafter a supplemental motion to disqualify Judge Greer. Two hearings were held on the second motion to withdraw—one before Judge Greer prior to his recusal and one before the Undersigned—and it too was denied. Snipes proceeded to sentencing and, due to a combination of the drug amounts and to his prior state felony-drug convictions, he received a life term.

**D.** *Discussion*

Snipes' grounds for relief involve claims of ineffective assistance of counsel in connection with his guilty plea, which he now asserts was unknowing and invalid. The United States has responded, arguing that Snipes waived his right to raise these issues in a § 2255 motion, by signing and entering into a plea agreement which contained a waiver provision. It next argues that because Snipes' challenges to his guilty plea are essentially the same claims which this Court and the Sixth Circuit previously considered and rejected, those issues may not be re-litigated in a § 2255 motion. The United States finally asserts that Snipes has not shown that he received ineffective assistance of counsel.

**1. <u>Waiver</u>**

Paragraph fourteen of Snipes' plea agreement provides, in relevant part, that he "knowingly and voluntarily agrees to waive any rights he may have to file any post-conviction motions or pleadings pursuant to Title 28, United States Code, Section 2255," [Doc. 18, Plea Agreement at 9]. The document goes on to say that the waiver does not apply

4

to Snipes' right to appeal or collaterally attack the conviction and sentence upon grounds of ineffective assistance of counsel unknown to him at the time of his plea, [*Id.* at 9-10].

It is well recognized that a party may waive a provision intended for his benefit in a contract or statute. *Shutte v. Thompson*, 21 L.Ed. 123 (1873). Even fundamental constitutional rights may be waived by an accused, so long as the waiver is knowingly and voluntarily made. *Ricketts v. Adamson*, 483 U.S. 1, 10 (1987) (double jeopardy defense); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (same, rights to jury trial and confrontation and privilege against self-incrimination); *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938) (right to counsel); *United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir.2005) (right to appeal); and. *Watson v. United States*, 165 F.3d 486, 489 (6th Cir.1999) (right to collateral attack). Therefore, so long as Snipes understood the terms of the plea agreement and so long as it was made voluntarily and knowingly, the waiver part of that agreement is valid and enforceable.

Based on the transcript of the plea proceedings, it is clear to the Court that Snipes understood the charges against him, that he understood that his sentence would be a mandatory life sentence for the charge, that he understood the plea agreement, including the waiver provision, that he understood the consequences of his guilty plea, and, as Judge Greer found at the change-of-plea hearing, that he entered his plea knowingly and voluntarily, [Doc. 22, Chg. of Plea Hr'g T.]. Furthermore, since Snipes knew about the alleged attorney errors raised in his § 2255 petition before he entered his plea, those claims are not exempt from the waiver bar. Therefore, the waiver-of-§ 2255-relief provision in the plea agreement

5

is valid and enforceable, which means, as the United States correctly argues, that he has waived the right to raise the claims of ineffective assistance and the legality of his guilty plea.

## 2. **Re-litigation Argument**

During Snipes' attempts to withdraw his guilty plea, he made allegations that the plea had been entered into only because of ineffective assistance of counsel. Among the alleged attorney shortcomings to which he cited were that his attorney told him that he would have to go to trial unless he signed the plea agreement that day, that it was likely that, if his case were tried, he would have an all-white jury and that one or more of the jurors would be biased against him due to his race; that the prosecutor would cause people to be arrested and have them lie on him; that his attorney told him that Snipes' mother wanted him to sign the plea agreement; and that he could not testify because of his drug convictions, [Doc. 54, Order at 15-16].

In ruling on the motion, this Court determined that all the statements, except the one about Snipes' mother, were undisputed and were likely correct, with the caveat that there was no hint in the record to support an inference that the prosecutor would have suborned perjury, [*Id.* at 16]. Furthermore, the Court found that those statements were part and parcel of counsel's obligation to advise his client about the realities of going to trial and that, even though the advice may have been unwelcome to Snipes and his mother, that did not make Snipes' attorney ineffective for offering it, [*Ibid.*]. *See, e.g., Government of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3rd Cir. 996) ("The Supreme Court has never

6

concluded, however, that aversions and affinities arising from the attitudes and experiences of different racial groups do not exist or that they do not affect jury verdicts. There is some empirical evidence to the contrary. Nor has the Supreme Court ever held that ineffective assistance of counsel occurs whenever an attorney exercises his or her professional judgment based on the belief that such aversions and affinities may influence a jury's verdict.") (all internal citations omitted).

When the Court's ruling on the motion to withdraw was challenged on appeal, the Sixth Circuit characterized this Court's opinion as well-reasoned; commented on the care and thoroughness exhibited in the Court's analysis of Snipes' specific arguments for permitting withdrawal of his plea; decided that a detailed explanation covering the same issues would be duplicative; and concluded that the motion to withdraw had been properly denied.

To the extent that the instant allegations of ineffective assistance are those reviewed by the Sixth Circuit, they may not be revisited unless exceptional circumstances exist. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). Because Snipes has offered nothing which would constitute an extraordinary circumstance, the claims cannot be adjudicated again by this Court.

### 3. The Claims

#### a. Invalid Guilty Plea

Snipes maintains that his guilty plea was not knowing and voluntary because it was induced by Mr. Whitt's faulty legal advice, to wit, that Snipes was made to believe and did

believe that he would receive a downward departure upon the prosecutor's motion in exchange for his substantial assistance in the cases against Marshane Woods and Terry Woods. Snipes insists that he would not have pled guilty had he known that a departure motion would not be filed or that he would receive a life sentence.

    i. *Governing Principles*

The law which applies to this type of claim is found in *Boykin v. Alabama*, 395 U.S. 238 (1969). Before accepting a guilty plea, a court is required to determine whether a defendant understands he is waiving his right to a trial by jury, his right to confront the witnesses against him, and his privilege against self-incrimination. *Id.* at 243-44. "A guilty plea . . . cannot be truly voluntary if the defendant 'has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.'" *See Marshall v. Lonberger*, 459 U.S. 422, 431 (1983) (quoting *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

By the same token, a plea is not voluntary if it is induced by threatened physical harm or by mental coercion overbearing the will of the defendant. *Brady v. United States*, 397 U.S. 742, 750 (1979). *See also Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A plea of guilty, if induced by promises or threats that deprive it of the character of a voluntary act, is void."); *Ray v. Rose*, 491 F.2d 285, 290 (6th Cir. 1974) ("If the allegations are correct, petitioner's counsel ... deliberately misled and coerced him. It is inconceivable to us how a plea entered under these circumstances could be either intelligent or voluntary.)

ii. *Analysis*

During the plea colloquy, Judge Greer asked Snipes, who had sworn to tell the truth, whether he had read the plea agreement, whether he had signed it, whether his attorney had explained to him the terms and conditions of the agreement he had entered into with the government, and whether he understood the agreement, receiving affirmative answers from Snipes to each question, [Plea Hrg. T., pp. 5-6). The judicial officer then explained to Snipes his full panoply of rights and, when asked if he understood to what he was pleading guilty and the rights he was waiving thereby, Snipes answered each time that he did, [*Id.*, pp.5, 9-10]. Snipes also denied that anyone had pressured him mentally to plead guilty or that a governmental agent or officer had promised or suggested that he would receive a lighter sentence or any other form of leniency if he pled guilty, [*Id.*, p.7].

Snipes also indicated that he had read, agreed with, and signed the agreed factual basis which supported his plea; that he was offering to plea guilty because he in fact was guilty of the drug conspiracy charge; and that he understood that the Court could impose and would be required to impose a mandatory life sentence without parole, as set by the statute, [*Id.*, pp. 8-10]. It is well-settled law that a defendant's declarations in open court bear a strong presumption of truth. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The record that shows that Snipes knew that the government retained discretion to determine whether he had provided it with substantial assistance and that, only if it so determined, would it move for a downward departure. *Snipes*, 236 Fed. Appx. at 997, 2007

9

WL 1892111 at *1 (observing that the plea agreement explained that the motion for a downward departure from the mandatory life sentence for substantial assistance was left to the government's discretion). The record likewise shows that, at the time Snipes entered his plea, he also knew that a life sentence was statutorily required and would be imposed. *Id.* 236 Fed. Appx. at 997, 2007 WL 1892111 at *1 (noting that Snipes' plea agreement "explicitly spelled out the mandatory-minimum sentence to which he was subject"). Any claim to the contrary is clearly refuted by the record. Therefore, the Court finds Snipes guilty plea to the drug conspiracy charge after having been convicted of two prior felony drug offenses was not induced by counsel's faulty advice, but instead, was voluntary and knowing.

b. Ineffective Assistance

Snipes claims, in his § 2255 motion, that, had it not been for the faulty legal advice, misconceptions, misrepresentations, and serious missteps made by the attorneys in this case, the outcome of the proceedings would have been different. The specific instances of claimed ineffective assistance now advanced are that Counselor Whitt was not a vigorous advocate, did not fight for Snipes during the plea phase of the proceedings, and (by inference) did not ensure the preservation of Snipes's right to make a reasonably informed decision as to whether to accept the plea offer. Further, Snipes claims that the prosecutor stated on the record during the hearing on his second motion to withdraw the plea that Counselor Moncier was "screwing" Snipes by not permitting him to testify.

10

### i. *Governing Principles*

A petitioner who alleges a claim of ineffective assistance of counsel must show that his attorney's performance was deficient and resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Where a petitioner challenges a guilty plea on this basis, he must establish that: 1) the advice he received from counsel in entering the plea was not within the range of competence demanded of attorneys in criminal cases and 2) he was actually prejudiced in his defense because there is a reasonable probability that, without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985). A defendant has a Sixth Amendment right to counsel, including effective assistance from that counsel, during the plea-bargaining process. *Lafler v. Cooper*, _ S. Ct. _, _, 2012 WL 932019, * 6 (2012) ("The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice.").

In judging an attorney's conduct, a court should view counsel's performance with great deference, engaging in a strong presumption that counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90. A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id.*, at 691-92. Unless there is a likelihood of a successful defense to

11

the charge, no alleged error by counsel is a basis for relief. *Hill*, 474 U.S. at 59. Indeed, counsel is constitutionally ineffective only if a performance which fell below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

ii. *Analysis*

First of all, the allegations against Attorney Whitt contained in the § 2255 motion are factually undeveloped, inasmuch as Snipes does not specify what issue(s) counsel should have vigorously advocated but failed to so advocate; does not identify the matter(s) for which counsel should have fought, but did not fight; and does not mention the nature of the advice counsel should have given but omitted to give. Nor does Snipes expand on his bald contention that counsel made misrepresentations and serious missteps, by describing the facts surrounding the claimed misrepresentations and the serious missteps on the part of Attorney Whitt. Likewise, while Snipes has made a passing reference to the comment the prosecutor made at the motion hearing, i.e., that he had advised Attorney Moncier that he was "really screwing Mr. Snipes in not permitting him to testify," [Doc. 62, Mot. Hr'g T. at 43], Snipes has offered no factual elaboration as to how the prosecutor's opinion of the caliber of Moncier's representation of Snipes, even if true, constituted a deficiency of performance or how it ensued in prejudice.

A petitioner bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. A § 2255 motion may be dismissed if it only makes vague

12

conclusory statements without substantiating allegations of specific facts and thereby fails to state a viable claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). Conclusory allegations such as these warrant no relief.

## II. **Motion to Supplement**

In this motion, Snipes proposes to add a claim based on a recent opinion in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), which itself followed the reasoning set forth in *Carichuri-Rosendo v. Holder*, ___ U.S. ___, 130 S.Ct. 2577 (2010). *Simmons* held that, under North Carolina's structured sentencing scheme, the maximum sentence for a particular defendant's offense hinges on his individual prior criminal history, so that the maximum sentence is not the highest sentence which could be imposed on an offender with the worst criminal history, but the highest sentence an individual offender can receive, given his prior criminal history. Because Snipes had been previously convicted of two North Carolina felony drug offenses, he was subject to an enhanced mandatory minimum life sentence under 21 U.S.C.§ 841(b)(1)(a).[2] Petitioner's proposed amendment is that, under the holding in

---

[2] As used in § 841(b)(1)(a), a "felony drug offense" means any state or federal drug offense punishable by more than one year's imprisonment. *Burgess v. United States*, 553 U.S. 124 (2008). *Simmons* makes it clear that, while a sentence of over one year could have been imposed on a hypothetical offender with the worst criminal history for the cocaine and marijuana convictions at issue, the maximum sentences which *Snipes* could have received for the relatively small amounts of drugs involved in his case, given *his* criminal background, were respective sentences of 8 months and 6 months. (Presentence Investigation Report, Part B. Defendant's Criminal History, ¶¶ 38 and 41). Thus, it appears that Snipes would have *no* qualifying predicate offenses for purposes of § 841(b)(1)(A) were he to be sentenced today.

13

*Simmons*, he is no longer subject to career offender status, under U.S.S.G. § 4B1.1, or to a a mandatory life sentence, under 21 U.S.C. § 841(b)(1)(A), because his North Carolina drug convictions, which triggered the mandatory life sentence, no longer qualify as prior felony convictions for purposes of enhancing his sentence.

Prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the only time constraint for a federal prisoner to file a § 2255 motion was the prejudice which would ensue if the respondent were required to respond to the motion to vacate due to a delay in filing. *See* Advisory Committee Note to 1976 Adoption to Rule 9, Rules Governing Section 2255 Proceedings. As a result of the AEDPA, however, a federal prisoner now has one year in which to file a § 2255 motion. 28 U.S.C. § 2255(f). The limitation period generally runs from the date on which the judgment of conviction becomes final, which in this case was October 23, 2007, when the U. S. Supreme Court denied Snipes' petition for certiorari review of the Sixth Circuit's decision on his direct appeal.

The claim asserted in the supplemental motion was filed on February 2, 2012—well past October 23, 2008, the date on which lapsed § 2255(f)'s one-year limitations statute. Therefore, unless the claim "relates" back under Rule 15(c)(2) of the Federal Rules of Civil Procedure to the claims alleged in the timely-filed initial petition, it is time-barred. *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (applying Rule 15(c)(2) to § 2254 petitions); *Howard v. United States*, 533 F.3d 472, 475-76 (6th Cir. 2008) (applying Rule 15(c)(2) to § 2255

motions). The question, then, is whether the amendments are timely because they "relate back" to the original filing date.

As the Supreme Court has explained, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims. *Mayle*, 545 U.S. at 659 (citation omitted). The new claim was not raised in the original petition and the claims which were raised therein did not share "a common core of operative facts" with the proposed amendment. Therefore, the claim offered in the motion to amend does not relate back to the claims initially offered in the motion to vacate.

But, even if the claim sought to be added related back to the timely-filed claims in the original § 2255 pleading, the result would be the same. In determining whether amendments should be allowed, one factor a court must examine is the futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Robinson v. Michigan Consolidated Gas Co. Inc.*, 918 F.2d 579, 591 (6th Cir. 1990). An amendment which is "futile" need not be added, *Foman*, 371 U.S. at 182, and an amendment which would not permit a complaint to survive a motion to dismiss, as is the case here, is futile. *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005).

Allowing this proposed amendment to be added would be useless because it is barred by the retroactivity doctrine announced in *Teague v. Lane*, 489 U.S. 288 (1989). New rules of procedure generally apply to cases not yet final, *Griffith v. Kentucky,* 479 U.S. 314, 328 (1987), but, with limited exceptions, not to cases which have become final before the rule is

established. *Teague*, 489 U.S. at 310. Indeed, in a recent order entered in this case, the Court rejected Snipes' § 3582(c) motion to reduce his sentence because *Carachuri-Rosendo* does not apply to cases on collateral review, like this instant motion to vacate, [Doc. 88].

Likewise, the claim, if added, would be vulnerable to dismissal upon respondent's assertion of a defense of procedural default. This is so because Snipes could have offered this claim on direct appeal, but he failed to do so. Snipes could overcome the procedural default if he shows cause and actual prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998) (where defendant fails to raise a claim on direct review, a procedural default ensues, which may be overcome by showing cause and actual prejudice or actual innocence); *Elzy v. United States*, 205 F.3d 882, 885 (6th Cir. 2000).

Cause for a procedural default may be shown by "a claim that is so novel that its legal basis is not reasonably available to counsel." *Bousley*, 523 U.S. at 622 (internal quotation marks and citation omitted). But here, other defendants who were appealing at the same time as Snipes were raising the claim. *See e.g., United States v. Smith*, 252 Fed. App'x 20, *31-*32, 2007 WL 3101329, *9-*10 (6th Cir. Oct. 19, 2007). Thus, "the fact that the same legal argument was being put forward to courts during [Snipes] direct appeal indicates that the legal tools ... necessary to conceive and argue the claim existed." *Gibbs v. United States*, 655 F.3d 473, 476 (6th Cir. 2011)(internal quotation marks omitted).[3]

---

[3] By the same token, because Snipes could have challenged on direct appeal his career offender designation on the basis that he did not have the requisite qualifying predicate felony-drug convictions to sustain it, he cannot obtain the benefit of a new statute of
(continued...)

Snipes argues in a recent filing, [Doc. 89, Motion to Reconsider Ruling on 18 U.S.C. § 3582(c) Expedited Motion], that his actual innocence of the career offender enhancement to his sentence serves to lift the procedural bar. Though panels of the Sixth Circuit have suggested that the actual innocent exception does not apply to a challenge to a non-capital sentence, *Flahardy v. United States*, 1995 WL 570925, 2 (6th Cir. Sept. 27, 1994) (unpublished disposition); *Black v. United States*, 61 F.3d 903, 1995 WL 445718, *2 (6th Cir. July 26, 1995) (unpublished disposition), the Sixth Circuit has declined to address the issue squarely in a published case. *Gibbs*, 655 F.3d at 477–78.

*Gibbs*, however reads a petitioner's assertions that he is actually innocent of the sentence because he was incorrectly categorized as a career offender under U.S.S.G.§ 4B.1.1, as a claim that his offense level and criminal history were miscalculated under the federal sentencing guidelines. Aside from whether the actual innocence exception applies in some noncapital sentencing contexts, the exception does not permit prisoners to raise claims about guidelines calculations in a collateral attack, nor to rely on "actual innocence" to avoid a procedural default on such a claim. *Gibbs*, 655 F.3d at 478. The same reasoning applies to Snipes' assertion of being actually innocent of the career offender category and, thus, of the enhanced life sentence.

---

[3](...continued)
limitations under § 2255(f)(4), which runs from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

For these reasons, Snipes' motion to supplement is untimely under 28 U.S.C. § 2255(f) and, alternatively, futile under both *Teague*'s retroactivity rule and the procedural default rules. Accordingly, the motion is **DENIED**.

### III. Other Motions

Snipes' motions for status and to expedite, [Docs. 81 and 85], are **GRANTED**, considering that the motion to vacate has been resolved in this opinion. Snipes' motion to appoint counsel, [Doc. 87], is **DENIED** because the Court has found that his motion to vacate does not entitle him to relief and because, at any rate, there is no reason to appoint counsel to pursue a baseless motion.

### IV. Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should Snipes file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For claims rejected on a procedural basis, a COA is warranted if jurists of reason would debate the correctness of the Court's procedural ruling. *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed Snipes' claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law and jurists of reason would not conclude the disposition of those claims was debatable or wrong.

One claim meriting further discussion, but not a COA, as explained below, is the one offered in Snipes' motion to supplement, which involves his 1998 and 1999 prior felony-drug convictions and the holdings in *Carichuri-Rosendo v. Holder*, __ U.S. __, 130 S.Ct. 2577 (2010), and *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011). The claim has been quite troubling to the Court when it appears that, under a proper interpretation of North Carolina's structured sentencing law, Snipes would not have had qualifying predicate offenses to impose an enhanced sentence of life.

The equities seemingly fall on Snipes' side. *See Martinez v. Ryan*, __ S. Ct. __, __, 2012 WL 912950, *8 (2012) (recognizing an equitable exception to the procedural default rules), and *12 ("[T]he Court holds that, for equitable reasons, in a case such as the one before us, failing to provide assistance of counsel, or providing assistance of counsel that falls below the *Strickland* standard, constitutes cause for excusing procedural default.") (Scalia, J., dissenting). But the law does not. *Id.*, 2012 WL912950 at *14 ("Equity is not lawlessness, and discretion is not license to cast aside established jurisprudence . . . . Courts of equity must be governed by rules and precedents no less than courts of law.") (Scalia, J., dissenting) (internal punctuation marks and citations omitted). The Court is mindful that "the

19

Case 2:03-cr-00070 Document 90 Filed 03/29/12 Page 19 of 20 PageID #: 345

prerogative of overruling its own decisions" lies with the Supreme Court, *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989), and that "unless and until" that happens, lower courts must follow Supreme Court case law. *Agostini v. Felton*, 521 U.S. 203, 238 (1997). That said, the Court believes that it has applied the procedural rules correctly to the *Carichuri*-based claim and that jurists of reason would not debate that it has.

## V. Conclusion

For the reasons indicated above, Snipes' § 2255 motion to vacate, set aside or correct his sentence will be **DENIED** and this action will be **DISMISSED**. The Court **FINDS** that any appeal from this decision would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

An appropriate order will follow.

**ENTER**:

*/s/ Leon Jordan*
LEON JORDAN
UNITED STATES DISTRICT JUDGE